**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**TOLEDO DIVISION**

| | | |
|---|---|---|
| ADIA A. WASHINGTON | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 18-cv-02008 |
| | ) | |
| v. | ) | THE HONORABLE |
| | ) | JAMES G. CARR |
| WEINBERG MEDIATION GROUP, LLC | ) | UNITED STATES DISTRICT JUDGE |
| JTM CAPITAL MANAGEMENT, LLC | ) | |
| | ) | THE HONORABLE |
| Defendants. | ) | JAMES R. KNEPP, II |
| | ) | UNITED STATES MAGISTRATE JUDGE |

**DEFENDANT JTM CAPITAL MANAGEMENT, LLC'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Michael J. Palumbo, Esq.
Anthony J. Gingo, Esq.
Summit One
4700 Rockside Road, Suite 440
Independence, Ohio 44131
Telephone: (216) 503-9512
Facsimile: (888) 827-0855
Emails: michael@gplawllc.com
        anthony@gplawllc.com

Brendan H. Little, Esq.
*Admitted Pro Hac Vice*
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14203
Email: blittle@lippes.com

*Counsel for Defendant,*
*JTM Capital Management, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

STATEMENT OF THE ISSUES TO BE DECIDED ........................................... v

SUMMARY OF THE ARGUMENTS PRESENTED .................................... vi

PRELIMINARY STATEMENT ....................................................................... 1

ARGUMENT ................................................................................................... 2

I. Summary Judgment Standard ................................................................. 2

II. JTM is a creditor ................................................................................... 3

III. JTM is not a debt collector as defined by the FDCPA ...................... 4

    a. The "regularly collects" prong is inapplicable
    because JTM owns the debt in question ................................................. 5

    b. JTM's principal purpose is not collecting debts ........................... 6

        i. Interaction with the consumer is necessary
        to determine whether a business qualifies
        as a debt collector ...................................................................... 6

        ii. The legislative history demonstrates Congress'
        focus on third party interaction with consumers ........................ 8

    c. It has already been determined that JTM is
    not a debt collector ........................................................................... 11

    d. The Third Circuit's decision in Barbato is misplaced .............. 14

IV. JTM did not violate the FDCPA ........................................................ 16

V. JTM is not vicariously liable for the alleged
violations of Weinberg ............................................................................. 18

CONCLUSION ............................................................................................. 20

i

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)..................................................................................2

*Barbato v. Greystone Alliance, LLC,*
   916 F.3d 260 (3d Cir. 2019)..................................................................14,15

*Barnhart v. Nationstar Mortg. LLC,*
   2016 WL 11005038 (6th Cir. Oct. 28, 2016)...........................................3,4

*Bodur v. Palisades Collection, LLC,*
   829 F. Supp. 2d 246 (S.D.N.Y. 2011)........................................................18

*Briggs v. Wells Fargo Bank, N.A.,*
   2015 WL 1014184 (E.D.N.Y. Mar. 6, 2015).................................................5

*Clark v. Capital Credit & Collection Servs., Inc.,*
   460 F.3d 1162 (9th Cir. 2006) ................................................................5,18

*Clark v. v. Main St. Acquisition Corp.,*
   2013 WL 2295879 (S.D. Ohio May 24, 2013)*aff'd sub nom.*
   *Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510 (6th Cir. 2014) .......18

*Davidson v. Capital One Bank (USA), N.A.,*
   797 F.3d 1309 (11th Cir. 2015) ..................................................................4

*Dorrian v. LVNV Funding, LLC,,*
   479 Mass. 265 (2018) ................................................................................13

*Fox v. Citicorp Credit Servs., Inc.,*
   15 F.3d 1507 (9th Cir. 1994) ......................................................................5

*Gold v. Midland Credit Mgmt, Inc.,*
   82 F. Supp. 3d 1064 (N.D. Cal. 2015) ...................................................12,13

*Hasan v. CitiMortgage, Inc.,*
   2017 WL 57294 (N.D. Ohio Jan. 5, 2017)................................................3,4

*Henson v. Santander Consumer USA Inc.,*
   137 S. Ct. 1718 (2017).............................................................................3,4

*Henson v. Santander Consumer USA, Inc.,*
817 F.3d 131 (4th Cir. 2016) ...................................................................4

*IBP, Inc. v. Alvarez,*
546 U.S. 21 (2005) ..................................................................................16

*Janetos v. Fulton Friedman & Gullace, LLP,*
825 F.3d 317 (7th Cir. 2016) ...................................................................5

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,,*
559 U.S. 573 (2010) ................................................................................13

*Kasalo v. Trident Asset Management, LLC,*
53 F. Supp. 3d 1072 (N.D. Ill. 2014) ...................................................12,13

*Lewis v. ACB Bus. Servs., Inc.,*
135 F.3d 389 (6th Cir. 1998) ...................................................................4

*MacDermid v. Discover Fin. Servs.,*
488 F.3d 721 (6th Cir. 2007) .................................................................3,4

*McAdory v. M.N.S. Assoc., LLC,* 2017 WL 5071263 (D. Or. Nov. 3, 2017),
*reconsideration denied* 2018 WL 1256482
(D. Or. Mar. 11, 2018) (appeal pending) ...............................................12,14

*McCormick v. D & A Servs.,*
2018 WL 4335597 (N.D. Ohio Spet. 11, 2018) ..........................................17

*McNall v. Credit Bureau of Josephine Cty.*
689 F. Supp. 2d 1265 (D. Or. 2010) .........................................................18

*Montgomery v. Huntington Bank,*
346 F.3d 693 (6th Cir. 2003) ...................................................................4

*Schneider v. JTM Capital Management, LLC,*
2018 WL 2276238 (D. Or. Mar. 22, 2018), *adopted by*
2018 WL 2248451 (D. Or. May 15, 2018) ......................................1,11,12,14

*The Lincoln Elec. Co. v. Nat'l Standard, LLC,*
2011 WL 767888 (N.D. Ohio Feb. 28, 2011) ..............................................2

*Tolton v. American Biodyne, Inc.,*
48 F.3d 937 (6th Cir. 1995) .....................................................................2

*U.S. v. Santos,*
   553 U.S. 507, 512 (2008)........................................................................15

*Wadlington v. Credit Acceptance Corp.,*
   76 F.3d 103 (6th Cir. 1996) ...................................................................3

*Wagner v. Circle W Mastiffs,*
   2014 WL 1308713 (S.D. Ohio Mar. 31, 2014) .................................5

*Wai Hoe Liew v. Cohen & Slamowitz, LLP,*
   265 F. Supp. 3d 260 (E.D.N.Y. 2017) *as revised* (June 16, 2017) ..............................18

*Wells Fargo Bank, N.A. v. Favino,*
   2011 WL 1256771 (N.D. Ohio Mar. 31, 2011) ..............................14

**Federal Statutes**

Fair Debt Collection Practices Act ......................................................*passim*

Fed. R. Civ. P. 56................................................................................2

**Other Citations**

Collection, Webster's Ninth New Collegiate Dictionary 259 (1986)................................14

S. Rep. 95-382, 95th Cong., 1st Sess., 1 (1977), *reprinted in*
1977 U.S.C.C.A.N. 1695 ......................................................................9

H. Rep. No. 99-405, 99th Cong., 1st Sess., 1 (1986), *reprinted in*
1986 U.S.C.C.A.N. 1752 ......................................................................10

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

The issues to be decided in this case are: (1) whether JTM Capital Management, LLC ("JTM") subject to the FDCPA; (2) if JTM is subject to the FDCPA, did it directly violate the FDCPA; and (3) if JTM is subject to the FDCPA, is it vicariously liable for the alleged violations of co-defendant Weinberg Mediation Group, LLC.

## <u>SUMMARY OF THE ARGUMENTS PRESENTED</u>

In support of its motion for summary judgment, JTM Capital Management, LLC ("JTM") argues the following: (1) JTM is a creditor and as a result, the FDCPA does not apply to JTM; (2) JTM is not a debt collector as defined by the FDCPA; (3) even if JTM is subject to the FDCPA, it did not violate the FDCPA; and (4) even if JTM is subject to the FDCPA, it is not vicariously liable for the alleged violations of co-defendant Weinberg Mediation Group, LLC.

## PRELIMINARY STATEMENT

JTM Capital Management, LLC ("JTM") is the owner of a debt owed by Plaintiff Adia Washington ("Plaintiff").[1] After purchasing Plaintiff's debt, JTM placed the debt with Weinberg Mediation Group, LLC ("Weinberg") for collection.

On August 31, 2018, Plaintiff filed the subject Complaint alleging Defendants collectively violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692g. (Doc. 1, p. 4-6). Plaintiff contends that Defendants violated 15 U.S.C. § 1692e by: (1) implying Weinberg was an attorney and/or mediator; (2) implying Plaintiff would be subjected to legal action if she failed to pay her debt; and (3) using the phrase "payment agreement balance" in written correspondence to Plaintiff. (Doc. 1, p. 4-5). Plaintiff contends that Defendants violated 15 U.S.C. § 1692g because Weinberg failed to send written notice containing the information required by 15 U.S.C. § 1692g within five days of its initial communication with Plaintiff. (Doc. 1, p. 6). Critically, Plaintiff admits that Weinberg is the entity that communicated with Plaintiff, not JTM.

Plaintiff's theory of liability against JTM is that "JTM is either directly liable for its role as the current holder of the subject debt, or is vicariously liable for Weinberg's violations of the FDCPA." (Doc. 1, ¶ 35). However, JTM is not subject to the FDCPA because it is the current creditor of the account. Importantly, it has already been determined that JTM is not a debt collector. *See Schneider v. JTM Capital Management, LLC*, 2018 WL 2276238 (D. Or. Mar. 22, 2018), *adopted by* 2018 WL 2248451 (D. Or. May 15, 2018). As a creditor, the FDCPA does not apply to JTM and summary judgment should be granted.

---

[1] While Local Civil Rule 7.1(f) require a memorandum relating to a dispositive motion not to exceed 10 pages in length for expedited cases, this Court's individual preferences allow for longer briefing if the number of issues or their complexity warrant lengthier briefing. *See* Judge Carr Civil Cases – Case Management Preferences, § 3, Motions (https://www.ohnd.uscourts.gov/judge-carr-civil-cases-case-management-preferences).  JTM submits the instant motion does require lengthier briefing.

Even if the Court finds there is a question of fact as to whether JTM is otherwise subject to the FDCPA, JTM did not directly violate the FDCPA and cannot be held vicariously liable for the alleged actions of Weinberg. Accordingly, the Court should nonetheless grant JTM's motion for summary judgment and dismiss the Complaint against JTM in its entirety.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a reasonable jury could return a verdict for the nonmoving party. "A mere scintilla of evidence in support of the nonmoving party will not suffice; there must be evidence by which a jury could reasonably find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

In reviewing a summary judgment motion, the court will view the matter "in the light most favorable to the party opposing the motion." *The Lincoln Elec. Co. v. Nat'l Standard, LLC*, 2011 WL 767888, at *2 (N.D. Ohio Feb. 28, 2011). Indeed, "[s]ummary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case." *Id*., citing *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995). To that end, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson,* at 247–48 (emphasis in original).

Likewise, "[i]n responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary

judgment.'" *Wagner v. Circle W Mastiffs*, 2014 WL 1308713, at *6 (S.D. Ohio Mar. 31, 2014).

## II.    JTM IS A CREDITOR

Creditors are not subject to the FDCPA. *Barnhart v. Nationstar Mortg. LLC*, 2016 WL 11005038, at *2 (6th Cir. Oct. 28, 2016); *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007); *Hasan v. CitiMortgage, Inc.*, 2017 WL 57294, at *4 (N.D. Ohio Jan. 5, 2017). The FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or *to whom a debt is owed*, but the term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4) (emphasis added). Based on the plain language of the FDCPA, the only way a creditor can become a debt collector is if the creditor uses a different name to collect debts owed to it, thus creating the impression that a third party is collecting. 15 U.S.C. § 1692a(6).

The definition of creditor is not limited to only persons who extend credit, originate or create a debt. Purchasers of debt are explicitly included in the definition of creditor, regardless of whether the debt was in default at the time of purchase. "Congress expressly differentiated between a person who 'offers credit' (the originator) and a person 'to whom a debt is owed' (the present debt owner)" when including debt buyers in the definition of "creditor." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017) (citing 15 U.S.C. § 1692a(4)). Importantly, the Supreme Court in *Henson* determined that the status of a debt at the time it was acquired does not change the owner of the debt's identity as a creditor. *Id*. at 1724 ("we don't see why a defaulted debt purchaser … couldn't qualify as a creditor").

Accordingly, the definition of creditor includes a debt buyer, like JTM, because the debt is owed to the debt buyer. 15 U.S.C. § 1692a(4); *see also Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 140 (4th Cir. 2016) ("But when that same entity acts to collect its own debts, it is

3

acting as a *creditor,* not a *debt collector*."); *Henson,* 137 S. Ct. at 1724 ("So a company collecting purchased defaulted debt for its own account… would hardly seem to be barred from qualifying as a creditor under the statute's plain terms.").

Moreover, a creditor who collects debt that it owns does so without being subjected to the FDCPA's proscriptions. *Henson,* 817 F.3d at 135–36; *Davidson v. Capital One Bank (USA), N.A.,* 797 F.3d 1309, 1313 (11th Cir. 2015); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 411 (6th Cir. 1998); *Wells Fargo Bank, N.A. v. Favino,* 2011 WL 1256771, at *7 (N.D. Ohio Mar. 31, 2011).

The evidence in this record demonstrates JTM purchased Plaintiff's account, originated by Mid America Bank and Trust on May 30, 2017, acquiring all rights, title and interest in the debt. *See* Statement of Material Facts ("SOF"), ¶ 8. In the Complaint, Plaintiff concedes the debt is owed to JTM. (Doc. 1, ¶ 35). Thus, it is undisputed that JTM is the person to whom Plaintiff's debt in question is owed and therefore is a creditor as defined by the FDCPA. 15 U.S.C. § 1692a(4). As JTM is a creditor, the FDCPA is inapplicable and summary judgment should be granted. *Barnhart,* 2016 WL 11005038, at *2, *MacDermid,* 488 F.3d at 735; *Hasan,* 2017 WL 57294, at *4.

## III.  JTM IS NOT A DEBT COLLECTOR AS DEFINED BY THE FDCPA

Even if the Court determines there is a question of fact as to whether a creditor like JTM can still fall within the statutory definition of a debt collector, JTM remains entitled to summary judgment. The Complaint contends, without any factual basis, that JTM is a debt collector by regurgitating the text of 15 U.S.C. § 1692a(6). (Doc. 1, ¶ 26). However, the evidence in the record establishes JTM does not fit under either definition.

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Therefore, the FDCPA only applies to and governs the conduct of debt collectors. *Montgomery v. Huntington Bank,* 346 F.3d 693, 698 (6th Cir. 2003) ("The

FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure [sic] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."); *see also Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir. 1996); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994). The FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collectors or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another… the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). Thus, the definition of debt collector encompasses businesses who meet the: (1) "principal purpose" prong; (2) "regularly collects" prong; (3) or creditor "false name" exception. Said differently, in order for the FDCPA to apply, JTM must be "either a debt collector or a creditor that attempted to collect its debts by using a false name." *Briggs v. Wells Fargo Bank, N.A.*, 2015 WL 1014184, at *5 (E.D.N.Y. Mar. 6, 2015). Plaintiff's Complaint does not allege that JTM was using a false name in attempting to collect debts it owned. (Doc. 1). Accordingly, for JTM to be a debt collector it must meet either the "principal purpose" prong or the "regularly collects" prong of 15 U.S.C. § 1692a(6). As detailed below, neither definition applies to JTM.

### a. THE "REGULARLY COLLECTS" PRONG IS INAPPLICABLE BECAUSE JTM OWNS THE DEBT IN QUESTION

As this Court has already determined, JTM does not meet the "regularly collects" prong of the definition of a debt collector because it owned Plaintiff's debt. (Doc. 14, p. 4, fn 2) ("I agree

with JTM, however, that it does not meet the § 1692a(6) definition of one who 'regularly collects…debts.'").

The United States Supreme Court determined that debt purchasers who do not engage in collection activities cannot qualify as debt collectors under the second prong of the statutory definition, which states in relevant part, "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See Henson*, 137 U.S. at 1721.

Pursuant to the Supreme Court's decision in *Henson*, debt purchasers, such as JTM, can never qualify as a "debt collector" under the second statutory definition because such an entity was not collecting or attempting to collect "debts owed or due or asserted to be owed or due ***another***." *Id.* at 1721 ("[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another'") (emphasis added). Instead, JTM retains third parties to service accounts that JTM owns. SOF, ¶ 5. The evidence in the record establishes JTM was the owner of Plaintiff's account during the time period referenced in the Complaint. Accordingly, JTM was not attempting to collect "debts owed or due or asserted to be owed or due another" as a matter of law and cannot fall under the "regularly collects" definition of a debt collector.

### b.      *JTM's PRINCIPAL PURPOSE IS NOT COLLECTING DEBTS*

JTM does not meet the "principal purpose" prong of the definition of a debt collector because its principal purpose is not collecting debts. The plain text of the FDCPA in conjunction with the legislative history make clear that interaction with a consumer (i.e. actual collection) is necessary for a entities principal purpose to be collecting debts.

### i.      *INTERACTION WITH THE CONSUMER IS NECESSARY TO DETERMINE WHETHER A BUSINESS QUALIFIES AS A DEBT COLLECTOR*

The definition of debt collector, as a whole, is illustrative to whom Congress intended the

FDCPA apply. As discussed above, the definition provides two disjunctive prongs, the "principal purpose" and "regularly collects" prongs, and a third definition, the false name exception. In addition, the definition of debt collector also contains several exclusions of persons who might fall within the definition, but are nonetheless excluded from FDCPA regulation.

A review of the characteristics common to each prong and exclusions in the definition of debt collector makes clear the person or business encompassed within the definition and exclusions is performing an action in connection with a debt. For example, under the false name exception a creditor is explicitly considered a debt collector when, *in the process of collecting his own debts*, he uses a false name. 15 U.S.C. § 1692a(6). Furthermore, the exclusions to the definition of debt collector demonstrate the principle that a debt collector, naturally, must have interaction with a consumer. 15 U.S.C. § 1692a(6)(A)-(F).

The exclusions of §1692a(6)(F) are also illustrative. Under §1692a(6)(F)(ii), a person who originated a debt, but is no longer owed the subject debt, is nevertheless excluded from the definition of debt collector when collecting or attempting to collect a debt owed to another. Under this exclusion, a person who would normally be considered a creditor because the debt originated with said person is now acting as a third party debt collector because the debt is owed to another when he attempts to collect such debt. At its most basic level, the definition of debt collector is premised on the concept of regulating action in connection with collecting a debt.

In addition to the definition of debt collector, other textual indicators differentiating passive debt buyers (current creditors) from debt collectors are found throughout the statute. For example, a debt collector is required to provide notice to the debtor with "the name and address of the original creditor, if different from the *current creditor*." 15 U.S.C. § 1692g(a)(5) (emphasis added).

Indeed, the FDCPA's provisions regulate the conduct of debt collectors and their

interaction with consumers. *See e.g.* 15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692f. 15 U.S.C. § 1692c governs a debt collector's obligations regarding communications with the consumer. 15 U.S.C. § 1692d prohibits debt collectors from engaging in harassing or abusive conduct in connection with the collection of a debt. 15 U.S.C. § 1692e prohibits a debt collector from using false, deceptive or misleading representations. 15 U.S.C. § 1692f governs general unfair debt collection practices.

The above provisions demonstrate that the conduct Congress intended to regulate was interaction with a consumer. A passive debt buyer who does not have any contact with consumers but, instead, hires third parties to engage in collection related activities cannot possibly directly violate any of the FDCPA's substantive provisions by its own conduct. A passive debt buyer such as JTM does not fall under the definition of a debt collector. As the title of the FDCPA states, Congress' concern is fair debt *collection practices*.

>    ii.    THE LEGISLATIVE HISTORY DEMONSTRATES CONGRESS' FOCUS ON THIRD PARTY INTERACTION WITH CONSUMERS

If the definition of debt collector as a whole and the other provisions of the FDCPA do not resolve any ambiguity surrounding the interpretation of "the collection of any debts," the legislative history conclusively establishes that the "principal purpose" prong applies only to third party debt collectors. The FDCPA was enacted in 1977 with the purpose of eliminating "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive *debt collection practices* are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (emphasis added).

In enacting the FDCPA, the Senate Committee on Banking, Housing, and Urban Affairs described the nature and purpose of the Bill as: "to protect consumers from a host of unfair,

harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. 95-382, 95th Cong., 1st Sess., 1 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695. Congress recognized the need for legislation because "[d]ebt collection by third parties is a substantial business which touches the lives of many Americans." *Id.* It is clear from the purpose of the legislation that Congress intended the person or entity described as a debt collector under the proposed legislation engage in some form of improper conduct toward the consumer. It is also clear that Congress intended that the Bill regulate the conduct of third parties acting on behalf of the principal creditor or debt owner. The Bill is completely silent on the obligations of creditors or debt owners who have no direct contact with the consumer in attempt to collect on debts owed to them. That is because the legislation was introduced due to the overarching concern that "debt collection abuse by third party debt collectors is a widespread and serious national problem," and not to regulate the owners of the debt. *Id.* at 2.

The Committee intended the term "debt collector" to:

> cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors. The requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business.

*Id.* at 3. The Bill also contained a host of excluded persons or entities that would otherwise meet the definition of debt collector. *Id.*; *see also Henson*, 817 F.3d at 136 ("we must first determine whether the person satisfies one of the statutory definitions given in the main text of § 1692a(6) before considering whether that person falls into one of the exclusions in subsections § 1692a(6)(A)-(F)"). Similar to the definition of debt collector, the definitions of the excluded entities all involve some form of interaction with the consumer. In addition, it was Congress' express intent that the courts would have the ability to further prohibit conduct of debt collectors

not specifically addressed in the legislation.  *Id.* at 4.  Congress, however, did not expressly intend for the courts to modify who would be governed by the FDCPA.

Furthermore, the legislative history of the FDCPA demonstrates the goal was to clearly and expressly target abusive debt collection practices in connection with *communications and interactions with consumers*, including "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95–382, at 2 (emphasis added); s*ee also Dorrian v. LVNV Funding, LLC*, 479 Mass. 265, 272–73 (2018). As discussed above, the overarching purpose of the FDCPA is to govern "the *interactions* between consumer debtors and debt collectors." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (emphasis added).

It is without question that Congress engaged in in-depth consideration of what entities should and should not be covered by the definition of a debt collector.  Indeed, the FDCPA explicitly excludes certain entities from the definition of a debt collector. *See* S. Rep. No. 95-382, at 4. This is further evidenced by the 1986 amendment to the definition of debt collector where Congress removed the attorney exception to the definition after an increase in attorneys' engagement in the debt collection industry. In proposing the bill to remove the attorney exception, Congress reaffirmed its position that the FDCPA's definition of debt collector applies to third parties collecting to debts owed to the debt owner. *See* H. Rep. No. 99-405, 99th Cong., 1st Sess., 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1752 ("The [FDCPA] prohibits the use of abusive, deceptive, and unfair debt collection practices by persons engaged in the business of collecting debts owned (sic) by consumers to third parties."). After the 1986 amendment, however, the

10

FDCPA still remained silent with regard to the liability of debt buyers for the actions of third parties hired to collect debts on their behalf.  If the Congress intended to subject a debt buyer, the person to whom a debt is owed, to the FDCPA, it would have done so.

### c.  IT HAS ALREADY BEEN DETERMINED THAT JTM IS NOT A DEBT COLLECTOR

Significantly, it has already been determined that JTM is not a "debt collector" under the FDCPA, but a "debt purchaser." *Schneider v. JTM Capital Management, LLC*, 2018 WL 2276238 (D. Or. Mar. 22, 2018), *adopted by* 2018 WL 2248451 (D. Or. May 15, 2018).

In *Schneider*, the plaintiff commenced an action against JTM claiming that JTM was liable for the actions of a third party debt collector with whom it contracted to collect on the plaintiff's account. There, JTM moved for summary judgment, arguing that it could not be held liable for alleged violations of the FDCPA because it is only a passive debt buyer that purchases defaulted accounts but does not engage in any collection related activities, and therefore does not meet the definition of debt collector. *Schneider,* 2018 WL 2276238, at *1.

The district court agreed and granted summary judgment to JTM, reasoning:

> Here, even though defendant acquires debts already in default, there is no evidence to suggest it did so to facilitate the collection of the debt for another. As noted above, there is some support for the argument that an entity that primarily purchases defaulted debt as its business purpose is a 'debt collector' because its purpose is to eventually collect on the debt, even if it hires a third party to do so. Nevertheless, the more persuasive line of cases specifically analyzes the principal purpose prong of the definition of 'debt collector' and excludes such entities from the definition. See, *e.g., Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1071 (N.D. Cal. 2015) (Plaintiff would have the court fill in the gap with an inference that because Midland Funding is in the business of acquiring defaulted debts, it must therefore be in the business of collecting on those debts.); *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1079 (N.D. Ill. 2014) (Although OPS purchased Kasalo's debt when it was in default, OPS has not undertaken any collection activity, as required to fit the definition of 'collector.).

11

. . .

> The definition of 'debt collector' does not include purely passive debt purchasing activity. As defense counsel noted at oral argument, 'collect' is a verb that requires action. To the extent plaintiff is concerned about the increased abuse of debtors via fly-by-night third parties utilized by passive debt purchasers, that is an issue appropriate for Congress to resolve. Defendant's motion for summary judgment should be granted.

*Schneider*, 2018 WL 2276238 at *5.

Importantly, the district court's decision in *Schneider* is consistent with *McAdory v. M.N.S. Assoc., LLC*, 2017 WL 5071263 (D. Or. Nov. 3, 2017), *reconsideration denied* 2018 WL 1256482 (D. Or. Mar. 11, 2018) (appeal pending); *Gold v. Midland Credit Mgmt, Inc.*, 82 F. Supp. 3d 1064 (N.D. Cal. 2015); and *Kasalo v. Trident Asset Management, LLC*, 53 F. Supp. 3d 1072, 1079 (N.D. Ill. 2014).

In *Gold*, the court dismissed the FDCPA claims against the debt buyer because there was "no evidence to suggest that [the debt buyer's] business is debt *collection*" notwithstanding evidence that the debt buyer has no employees and uses a debt collector to physically collect debts it owns. *Gold*, 82 F. Supp. 3d at 1071 (emphasis in original). In rejecting the plaintiff's argument that the defendant-debt buyer was a debt collector because its business is "purchasing defaulted consumer debts," the court noted that "[the plaintiff] would have the Court fill in the gap with an inference that because [the debt buyer] is in the business of acquiring defaulted debts, it must therefore be in the business of collecting on those debts." *Id*.

Building upon a common sense approach to whether a passive debt buyer is a "debt collector," the court then looked to the practical reasoning of the Northern District of Illinois' analysis in *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072 (N.D. Ill. 2014):

> The FDCPA governs interactions between debt collectors and consumers and seeks "to eliminate abusive debt collection practices

> by debt collectors." An entity that acquires a consumer's debt
> hoping to collect it but that does not have any interaction with the
> consumer itself does not necessarily undertake activities that fall
> within this purview.

*Kasalo*, 53 F. Supp. 3d at 1078; *see also Jerman*, 559 U.S. at 577 ("The [FDCPA] regulates

interactions between consumer debtors and "debt collector[s]…"). In finding that the debt buyer

was not a debt collector under the "principal purpose" prong, the court in *Gold* held that "the

absence of evidence showing a purpose to collect on those debts, [the plaintiff's] legal arguments

are insufficient to create a triable issue of fact on whether [the debt buyer] 'uses any instrumentality

of interstate commerce or the mails' to engage in a 'business the principal purpose of which is the

collection of any debts.'" *Gold*, 82 F. Supp. 3d at 1071 (quoting 15 U.S.C. § 1692a(6)).

In *McAdory*, the defendant-debt buyer moved to dismiss the complaint, arguing that it

could not be held liable under the FDCPA because it did not meet the FDCPA's definition of debt

collector as it merely buys defaulted accounts but takes no affirmative action to collect on them.

*McAdory*, 2017 WL 5071263. Relying primarily on *Kasalo*, 53 F. Supp.3d 1072 and *Gold*, 82 F.

Supp. 3d 1064, the district court stated:

> I find [the debt purchaser's] argument persuasive. The Courts in
> *Kasalo* and *Gold* present the most straightforward reasoning in
> interpreting the 'principal purpose' definition of debt collector at
> issue here. Debt purchasing companies…who have no interaction
> with debtors and merely contract with third-parties to collect on the
> debts they have purchased simply do not have the principal purpose
> of collecting debts. Therefore these companies must fall outside the
> purview of the FDCPA.

*Id.* at *3. The *McAdory* court noted that, "[w]hen looking at the various activities punished under

the FDCPA, it becomes clear that what Congress was concerned with, and intended to regulate,

was the *interaction* between a debt collector and consumer..." *Id.* (emphasis in original). *See also*

*Dorrian v. LVNV Funding, LLC*, 94 N.E.3d 370, 376-77 (Mass. 2018) ("The Federal legislative

13

history indicates that Congress's focus was on the regulation of improper, high pressure, deceptive debt collection practices, and did not consider passive debt buyers.").

The court in *Schneider*, like *McAdory*, proceeded with a common sense approach to the analysis of whether JTM was a debt collector and granted summary judgment in that regard. JTM submits summary judgment is similarly warranted in this lawsuit.

### d.  THE THIRD CIRCUIT'S DECISION IN *BARBATO* IS MISPLACED

It is anticipated that Plaintiff will rely on the Third Circuit decision in *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019), which also attempted an analysis of the definition of "collection"[2] in an effort to determine whether a passive debt buyer qualified as a debt collector under the "principal purpose" prong. *Barbato*, 916 F.3d at 267-68. There, the Third Circuit identified the multiple definitions of the term "collection" and opted to adopt the Second Definition. *Id*. ("it can also be defined as 'that which is collected'") (citing *Collection*, Random House Dictionary of the English Language 290 (1973)). The Third Circuit provided no insight into its decision to adopt one definition over the other, especially in light of the fact that each carries an entirely different meaning and results in a different interpretation of the statute.

In applying the Second Definition, the Third Circuit's "focus shift[ed] from the act of collecting to what is collected." *Id*. The Third Circuit's reasoning adopting the Second Definition is logically and grammatically misplaced. Even more problematic, the court highlighted the plaintiff's hypothetical that the debt buyer "could buy debt for the charitable purpose of forgiving it, or … reselling it … at a profit. In both cases, the entity's 'principal purpose' would not be

---

[2] The term "collection" in the "principal purpose" prong may be defined in multiple ways. It is first defined as "the act or process of collecting" (the "First Definition"). Collection, Webster's Ninth New Collegiate Dictionary 259 (1986). The second definition of "collection" is "something collected" (the "Second Definition"). *Id*. Each definition brings about an entirely different meaning. The term collection in the "principal purpose" prong unambiguously refers to the First Definition.

14

collection." *Id*. at 268. This hypothetical makes no sense using the Second Definition because "that which is collected" only speaks to acquiring debt, unless the court intended to extend the definition to encompass the receipt of payment from the third party who collected the debt from a consumer.

Moreover, the Third Circuit's analysis of the statutory language is foundationally based upon the purchase of defaulted consumer debts even though the mere purchase of a consumer debt appears nowhere in the definition of debt collector. Rather than focus its discussion on what a business does with a debt once it acquires it, the Third Circuit erroneously believes that Congress intended "collection of any debts" to mean obtaining payment on debts, regardless of who actually obtains payment or the means that are used.[3] *Id*. at 267. Essentially, the Third Circuit's interpretation of the "principal purpose" prong would only apply to debt buyers and no other business.

The Third Circuit's analysis of the word collection is also at odds with the word's use throughout the balance of the statute. In this regard, "context gives meaning." *U.S. v. Santos*, 553 U.S. 507, 512 (2008). Indeed, the term collection appears throughout the entire FDCPA employing the First Definition ("the act or process of collecting"). *See* 15 U.S.C. §§ 1692, 1692a(4), 1692d, 1692e, 1692g. As the Supreme Court discussed in *Henson* regarding the interpretation of the term "owed," there is a presumption that "identical words used in different parts of the same statute carry the same meaning." *Henson*, 137 U.S. at 1723 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)) (internal quotations omitted). For example, §§ 1692d and 1692e prohibit certain conduct "in connection with the collection of any debt." *See* 15 U.S.C. §§ 1692d, 1692e. Under no circumstances can "collection" be understood to mean "that which is collected" over "the act or process of collecting" in reading §1692d and §1692e. Even if the term "collection" is ambiguous,

---

[3] "As long as a business's *raison d'être* is obtaining payment on the debts it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment." *Barbato*, 916 F.3d at 267.

the surrounding text and construction of the FDCPA supports a finding that some affirmative conduct toward a consumer is required to meet the definition of debt collector under the "principal purpose" prong.

The Third Circuit expanded its analysis of the "principal purpose" prong to focus on the stream of revenue generated as the baseline for determining the status of an alleged debt collector and ignores the FDCPA's purpose of regulating *collection practices*. *See* 15 U.S.C. § 1692(e). Such an interpretation leaves more questions than answers regarding what a debt collector is as defined by the FDCPA.

## IV.     JTM DID NOT VIOLATE THE FDCPA

In the event that the Court determines there is a question of fact as to whether JTM is a debt collector subject to the FDCPA, it is still entitled to summary judgment because: (1) the Complaint does not allege JTM took any action that could have violated the FDCPA; and (2) the evidence in the record demonstrates JTM did not engage in conduct that violated the FDCPA.

15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff first contends that JTM violated 15 U.S.C. §§ 1692e, e(2), e(3), and e(10) because in communicating with Plaintiff: (1) "Defendants" implied that Weinberg was an attorney or was otherwise an entity that would subject Plaintiff to legal action if Plaintiff did not pay the debt owed.; (2) "Defendants" threatened to take legal action that was not intended to be taken or which could not be taken; and (3) "Defendants" included the phrase payment agreement balance in a collection letter to Plaintiff. (Doc. 1, ¶¶ 30-32).

15 U.S.C. § 1692g requires a debt collector to send certain required information to consumers relating to the account at issue. 15 U.S.C. § 1692g; *McCormick v. D & A Servs.*, 2018

WL 4335597, at *2 (N.D. Ohio Sept. 11, 2018). Plaintiff alleges that JTM violated 15 U.S.C. §

1692g because "Defendants" failed to send the required written notice within five days of

Weinberg's initial communication with Plaintiff. (Doc. 1, p. 6).

Here, JTM has established that it does not contact any consumer on the phone or by letter,

had no contact with Plaintiff at any time and took no absolutely no steps to collect Plaintiff's debt.

On November 1, 2019, Michael Hyla, JTM's Director of Compliance, gave testimony on behalf

of JTM. Mr. Hyla made clear that JTM does not contact debtors:

> Q: Okay. We will get to that. So by virtue of purchasing the account,
> it would make sense to me that JTM then owns the debt, correct?
> A: Correct.
> Q: Does JTM ever place phone calls to customers?
> A: No.
> Q: Does JTM ever send collection letters to customers?
> A: No, we do not.

SOF, ¶ 6. Here, JTM did not communicate with Plaintiff at any time. On July 23, 2019, Plaintiff

served Interrogatories on JTM. Declaration of Brendan H. Little, Esq. ("Little Dec."), Exhibit A.

On August 13, 2019, JTM provided the following relevant responses:

> 6. Identify the nature of Your role as it relates to sending of the
> Collection Letter(s) to Plaintiff.
>
> **Response**: Defendant has never sent any written communication to
> Plaintiff.
>
> 11. To the extent not previously done, identify all documents
> relevant, related to, or reflecting any aspect of any efforts
> undertaken by You to collect any debt(s) from Plaintiff, or to any
> debt(s) purportedly owed by Plaintiff to You.
>
> **Response**:  Defendant has not taken any steps to collect on the
> subject debt from Plaintiff.

Little Dec., Exhibit B. While Plaintiff's creative pleading, which alleged "Defendants" collectively

took action that violated the FDCPA, may have survived a motion to dismiss, the record after the

conclusion of discovery is definitive. JTM did not engage in conduct that violated the FDCPA.

17

Accordingly, the single path to hold JTM liable pursuant to the FDCPA is through a theory of vicarious liability, which is similarly disposed of below.

## V.     JTM IS NOT VICARIOUSLY LIABLE FOR THE ALLEGED VIOLATIONS OF WEINBERG

A debt collector may, under certain circumstances, be held vicariously liable for its agent's FDCPA violations. However, to be vicariously liable under the FDCPA, the principal must exercise control over the conduct or activities of the agent. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006); *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 283 (E.D.N.Y. 2017), *as revised* (June 16, 2017); *Clark v. v. Main St. Acquisition Corp.*, 2013 WL 2295879, at *7 (S.D. Ohio May 24, 2013*), aff'd sub nom. Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510 (6th Cir. 2014); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011); *McNall v. Credit Bureau of Josephine Cty.*, 689 F. Supp. 2d 1265, 1277 (D. Or. 2010).

*Clark v. Main St. Acquisition Corp.* is instructive. There, the plaintiff defaulted on a credit card obligation. *Clark*, 2013 WL 2295879 at *1. As a result, the account was eventually sold to the defendant Main Street Acquisition Corp. ("Main Street"). *Id.* Main Street hired a law firm to collect the plaintiff's debt. *Id.* The law firm corresponded with the plaintiff and eventually sued the plaintiff to collect the debt. *Id.* Thereafter, the plaintiff sued both the law firm and Main Street alleging both violated the FDCPA. *Id.* In disposing of the claim that Main Street could be held vicariously liable for the acts of its debt collection attorney, the Southern District of Ohio articulated the correct test for vicarious liability under the FDCPA: "the principal must exercise control over the conduct or activities of the agent." *Id.* at *7. The District Court granted Main Street's motion for summary judgment because there was no evidence that Main Street exercised and control over the conduct of the law firm. *Id.*

Here, this record demonstrates that JTM did not exercise control over Weinberg and cannot be held vicariously liable for Weinberg's actions. Mr. Hyla testified at length about JTM's contractual relationship with Weinberg. Mr. Hyla made clear that JTM entered into a Collection Services Agreement with Weinberg, under which Weinberg was provided accounts and debtor information to attempt to collect on same. SOF, ¶ 10. However, JTM does not have access to Weinberg's internal business practices, procedures or systems. SOF, ¶ 12. For example, Mr. Hyla made clear that JTM does not have access to the account notes of any agency that it contracts with to collect debt:

> Q: Does JTM have access to the account notes of its collection agencies – I will rephrase that. Does JTM have access to the account notes of the debt collection agencies in which it contracts with?
> A: Direct access?
> Q: I mean, I guess, if you can explain what type of access, that would probably make our lives easier.
> A: JTM has no direct access of any notes with any agencies that we contract with. JTM does have the ability to request notes from that agency.

SOF, ¶ 12. Mr. Hyla testified further that JTM does not provide training materials to collection agencies and that agencies are not awarded for performance and instead are compensated as defined in the applicable contract with JTM. SOF, ¶ 12.

Mr. Hyla's testimony demonstrates JTM did not exercise any control over Weinberg's communication with a debtor, other than the fact that the Collection Services Agreement requires an agency to abide by the FDCPA. SOF, ¶ 13. Put differently, JTM has no control over the manner in which Weinberg decided to word a letter to a debtor, the timeframe Weinberg decided to send Plaintiff written communication or the substance of its telephone call with Plaintiff. However, if Weinberg's conduct was found to have violated the law, JTM can and will terminate the collection services agreement with the agency. Indeed, JTM terminated its Collection Aervices Agreement

19

with Weinberg, partly due to the allegations contained in the instant lawsuit.  SOF, ¶¶ 13-14.

Put simply, JTM has demonstrated that it did not exercise control over Weinberg's collection practices and accordingly should not be held vicariously liable for same.

## CONCLUSION

JTM has established it is a creditor that is not subject to the FDCPA. However, even if the Court determines there is a question of facts as to whether JTM is still a debt collector as defined by the FDCPA, JTM did not directly violate the FDCPA and cannot be held vicariously liable for the alleged violations of Weinberg. Accordingly, JTM respectfully requests the Court grant JTM's motion for summary judgment and dismiss the Complaint in its entirety.

Dated: December 2, 2019

<div style="margin-left: 50%;">

Respectfully submitted,

*s/ Michael J. Palumbo*
_____
Michael J. Palumbo, Esq.
Ohio Attorney Registration #0081718
Anthony J. Gingo, Esq.
Ohio Attorney Registration #0085669
Summit One
4700 Rockside Road, Suite 440
Independence, Ohio 44131
Telephone: (216) 503-9512
Facsimile: (888) 827-0855
Emails: michael@gplawllc.com
            anthony@gplawllc.com

Brendan H. Little, Esq.
*Admitted Pro Hac Vice*
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14203
Email: blittle@lippes.com

*Counsel for Defendant,*
*JTM Capital Management, LLC*

</div>

<u>CERTIFICATE OF CASE MANAGEMENT TRACK</u>

The undersigned, in accordance with Loc.R. 7.1(f), hereby specifies that this Court assigned the within action to the Expedited Track on January 31, 2019.

*s/ Michael J. Palumbo*
_____

Michael J. Palumbo, Esquire
Anthony J. Gingo, Esquire
Brendan H. Little, Esquire

*Counsel for Defendant,*
*JTM Capital Management, LLC*

21

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Memorandum of Points and Authorities does not adhere to the page limitation set forth under Loc.R. 7.1(f) relating to memoranda for dispositive motions assigned to the Expedited Track.  While Local Civil Rule 7.1(f) require a memorandum relating to a dispositive motion not to exceed 10 pages in length for expedited cases, this Court's individual preferences allow for longer briefing if the number of issues or their complexity warrant lengthier briefing.  *See* Judge Carr Civil Cases – Case Management Preferences, § 3, Motions (https://www.ohnd.uscourts.gov/judge-carr-civil-cases-case-management-preferences).

*s/ Michael J. Palumbo*

Michael J. Palumbo, Esquire
Anthony J. Gingo, Esquire
Brendan H. Little, Esquire

*Counsel for Defendant,*
*JTM Capital Management, LLC*

CERTIFICATE OF SERVICE

The undersigned hereby certifies the following:

1.  ***Defendant JTM Capital Management, LLC's Memorandum of Points and Authorities in Support of Motion for Summary Judgment*** was filed on the date above via the CM/ECF Filing System for the United States District Court for the Northern District of Ohio (Western Division – Toledo).

2.  The Parties appearing on the Notice of Electronic Filing, and as noted below, may access the foregoing and aforesaid pleading through the CM/ECF system:

> Anthony J. Gingo, Esquire, anthony@gplawllc.com
> Taxiarchis Hatzidimitriadis, Esquire, thatz@sulaimanlaw.com
> Brendan H. Little, Esquire, blittle@lippes.com
> Michael J. Palumbo, Esquire, michael@gplawllc.com
> Nathan C. Volheim, Esquire, nvolheim@sulaimanlaw.com

3.  A true and accurate copy of the aforesaid pleading was served on the date above via United States regular mail, postage prepaid, upon the following:

> Weinberg Mediation Group, LLC
> 3380 Sheridan Drive, Suite 133
> Buffalo, New York 14266

*s/ Michael J. Palumbo*

Michael J. Palumbo, Esquire
Anthony J. Gingo, Esquire
Brendan H. Little, Esquire

*Counsel for Defendant,*
*JTM Capital Management, LLC*

23